CHAFFIN v. MANUFACTURING CO.

(Filed November 15, 1904).

DAMAGES—*Nominal—Waters and Water-courses.*

> In an action for damages for maintaining a dam, an instruction
> that to entitle the plaintiff to nominal damages he must show
> damages to an "appreciable" extent is erroneous, he being enti-
> tled to nominal damages if the water is ponded on his land to
> any extent.

MOTION to rehear this case, reported in 135 N. C., 95.
Motion dismissed.

*Watson, Buxton & Watson, Glenn, Manly & Hendren* and
*T. B. Bailey,* for the petitioners.
*Lindsay Patterson, E. L. Gaither* and *E. J. Justice,* in
opposition.

WALKER, J.   This is a petition to rehear the above-entitled
case, which was decided by this Court at Spring Term, 1904,
and is reported in 135 N. C., 95.   We then held that the
Court committed an error in its charge to the jury on the
question of nominal damages, which charge was as follows:
"If you find from the evidence that the erection of the dam
caused water to be ponded on the land of the plaintiffs to
any appreciable extent, the plaintiffs would be entitled to
recover nominal damages, although you might not be satisfied
that the plaintiffs had suffered substantial damages."   Coun-
sel do not allege in·the petition to rehear, nor do the certify-
ing members of the bar state, that there was any error what-
ever in the principles laid down by the Court in its opinion,
but the specific assignment of error is that this Court mis-
understood and misinterpreted the charge of the trial Court,
which they say conforms in every respect with the principles

of law declared by this Court. If error there was in our decision, either in stating the general principles of law relating to such cases as this one or in applying those principles to the special facts of the case, we must be quick to correct it and to reverse the former ruling. It is not only our plain duty so to do, but it will always be gratifying to be able to correct any error or inadvertence, so that no harm will ultimately come to the party who may have been prejudiced by our decision. But in this case, after a most careful consideration of the assignment of error in all its bearings and a thorough re-examination of the law, we are constrained to say that nothing has been shown which should induce us to change our former ruling. With the additional light which the petition, the certificate of members of the bar and the able briefs of counsel on the rehearing have shed upon the subject, we are as firmly convinced now as we were at last hearing that there was error in the instruction of the Court, which we have copied above from the case. His Honor told the jury that the plaintiffs were entitled to recover nominal damages if the water was ponded on their land to any *appreciable* extent. We think they were so entitled if it was ponded on the land to any extent. If the land was covered by water at all, however inappreciable the extent of the invasion of the plaintiffs' right, they are entitled to nominal damages, provided, however, it was caused by the erection of the dam. The very use of the word "appreciable" to qualify the word "extent" implies that the land might be covered to some extent and yet the plaintiffs would not be entitled to recover nominal damages, their right to recover such damages depending upon whether the extent of the invasion of their premises could be appreciated or estimated. If the use of the word "appreciable" did not imply that the land might be covered to some extent without the plaintiffs being entitled to nominal damages, why use the word at all?

It certainly cannot be said that the term "appreciable extent" is precisely synonymous with the words "any extent" in scope and meaning, for if so, as we have said, the use of the word "appreciable" was superfluous. It can make no difference how very small or how much less than any assignable quantity or value the injury to another's right may be, and we use the word "injury" now, as we did before, in its technical sense, the injured party is entitled to nominal damages, for they are based not upon any idea of damage however trivial, but are solely predicated on the infraction of a right when there has been no damage proved, and they are awarded because of the distinct legal wrong committed, however imperceptible, from which the law conclusively presumes that there has been some damage, in the absence of proof of any kind of damage. They are given, as is said in our former opinion, not as any equivalent for the wrong but in recognition of the technical injury and to determine and establish the plaintiffs' right. 1 Joyce on Damages, sec. 9.

But we think the error in this instruction more clearly appears when it is considered in connection with a subsequent instruction of the Court upon the question of damages. The Court charged the jury as follows: "If the plaintiffs have been damaged and the erection of the dam caused any damage, they are entitled to recover damage. If not damaged, or if damaged and the dam not the cause of the damage, they are entitled to recover nothing." In this instruction the jury are told that if the erection of the dam caused damage the plaintiffs are entitled to recover it, but if the plaintiffs were not damaged "they are entitled to recover nothing." In other words, the plaintiffs are not entitled to recover anything, not even nominal damages, unless they have proved that they were damaged. The Court is here speaking of the damage and not of the injury or the

technical invasion of the right. The first instruction related to the trespass, the act of raising the water in the stream so that it flowed upon the plaintiff's land, and this instruction refers to the consequent damage. It will be observed that the Court charged that if there was no damage shown the plaintiffs would recover "nothing," not even nominal damages, whereas it is conceded, as it should be, that if there was even a technical invasion of their premises the plaintiffs were entitled to recover at least nominal damages, even though they showed no actual or substantial damages. In any view we are able to take of the case, we think the charge of the Court in the particulars mentioned was at least calculated to mislead the jury (*Bank v. Gilmer*, 116 N. C., 705), even if it was not in itself erroneous, and we still think it was so.

The plaintiffs' counsel contend in their brief on the rehearing that the evidence of the plaintiffs showed that the water had been raised in the stream by the dam six feet, and that of the defendant that it had been raised two feet and nine inches. We do not consider this contention of counsel, for we are not fully advised as to how this rise affected the plaintiffs' land, if at all, and it is well not to express any opinion based upon the contention, as the defendant may be able to show at the next trial that there was not even any technical injury to the plaintiffs' land.

The views we expressed at the last term, and those which we now hold, seem to be strongly supported by a recent text-book which we find to be of exceptional merit. The writer substantially says: Each owner of land along a water-course has the natural right to have the stream maintain the condition which nature gives it throughout the entire extent of its territory. This rule gives him the right to have the water leave his land at its lowest level, as well as the right to have the water come down to him from above. Rights in running

water are governed by the maxim, *aqua currit et debet currere ut currere, solebat.* The right to the natural flow of the stream is a natural right and depends solely on ownership of the banks of the stream, regardless of whether any use has been made of it or not. Any swelling of the stream over the line is an invasion of the rights of the upper owner, who has a right to the stream in its natural condition, which he may protect not only for present needs but for possible future ones. It constitutes a direct trespass upon his property which he may seek the aid of the courts to redress, and he is not bound to show that he is specially injured to maintain the action. Injury is shown as soon as it appears that the water is backed over the line. The upper proprietor has a right to protect himself from the acquisition of prescriptive rights at least, and that right is not diminished by the fact that he has no present use for his rights to their full extent. When the rights of the upper owner are invaded, the law presumes damage. The maxim of the common law that the owner of the soil has absolute dominion over it above and below the surface, and damage caused to others by his rightful command over his own soil is *damnum absque injuria* has no application to such a case. Throwing the water back on the upper land is a nuisance in and of itself, of which the upper owner may complain whenever he desires to do so, whether it is a direct injury to him or not. He has a right to have his land free from the water and can object to its presence whenever he chooses; and the lower owner has no right in the premises. Farnham on Waters and Water Rights, secs. 546, 547 and 551.

The plaintiffs' counsel again complain of the charge of the Court upon the degree of proof required of the plaintiffs to entitle them to a verdict. The charge of the Judge should be considered in its entirety. Isolated expressions are not a fair or reliable test of judicial accuracy. Reviewing the

charge as a whole, upon this point, we are satisfied that it is sustained by reason and the weight of authority.

We do not think the decision of the Court at the last term is erroneous in the respect complained of and it must therefore stand. This dismisses the petition.

Petition Dismissed.